# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 04, 2014

## CHRISTOPHER JONES v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Gibson County**
**No. H8857     Clayburn Peeples, Judge**

_____

**No. W2014-00447-CCA-R3-PC  - Filed January 30, 2015**

_____

Petitioner, Christopher Jones, was convicted of one count of first degree premeditated murder and sentenced to life imprisonment. *State v. Christopher Alexander Jones*, No. W2011-01990-CCA-R3-CD, 2012 WL 4049175 (Tenn. Crim. App., Sept. 14, 2012), *perm. app. denied* (Tenn., Feb. 19, 2013). A panel of this court affirmed Petitioner's conviction on appeal. *Id*. Petitioner filed a petition seeking post-conviction relief, alleging that he was denied the effective assistance of counsel at trial. Following an evidentiary hearing, the post-conviction court denied relief. Having carefully reviewed the record before us, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which ALAN E. GLENN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Patrick Dollar, Jackson, Tennessee, for the appellant, Christopher A. Jones.

Herbert H. Slatery, III, Attorney General and Reporter; Meredith Devault, Senior Counsel; Garry Brown, District Attorney General; and Hillary Lawler Barham, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Trial

The facts underlying Petitioner's conviction are recited in this court's opinion in *State v. Christopher Allen Jones*, 2012 WL 4049175, at *1-13. In summary, Petitioner and the victim were both patrons of the Kitty Kat Lounge, a nightclub in Humboldt, Tennessee,

during the early morning hours of December 6, 2008. Petitioner and the victim were dancing together, and Petitioner confronted the victim about taking some money that he had apparently dropped on the floor. Petitioner and the victim argued, and the victim pushed Petitioner. Petitioner exited the nightclub, and the victim exited shortly thereafter. Patrons outside of the nightclub saw the victim confront Petitioner and "g[e]t in his face." The other patrons attempted to restrain Petitioner, but Petitioner removed his shirt to free himself. When he removed his shirt, a gun fell to the ground. Petitioner picked it up and pointed it at the victim. Petitioner shot the victim in the chest. The victim turned away from Petitioner to go back inside the nightclub. The nightclub owner's husband saw the victim running towards the front door of the nightclub, and Petitioner was following behind her and firing shots at her. When the victim got inside the door, she fell to the floor. The victim died from multiple gunshot wounds to her chest, back and arm.

The owner of the nightclub testified that Petitioner drank beer that night, but she did not know if Petitioner was intoxicated. She testified that she had never before seen Petitioner as upset as he was that night about the money. Another witness testified that Petitioner acted as if he was under the influence of "more than alcohol because [she had] never seen anybody act like that . . . ." Another witness testified that he saw Petitioner drink most of a bottle of vodka while he was at the nightclub and that Petitioner was highly intoxicated. Petitioner testified in his own defense at trial. Petitioner left work at 2:30 p.m. on December 5, 2008, and began drinking. He could not recall how many quarts of beer he drank. He also smoked marijuana "blunts" with friends, but he could not recall how many. On the way to the Kitty Kat Lounge, he shared a "fifth" of alcohol with the three people he was riding with, and he drank a pint of vodka by himself. Petitioner also took five Xanax pills that he got from his cousin. Petitioner purchased a quart of beer at the nightclub, and he testified that he did not remember anything that happened after that.

On direct appeal from Petitioner's conviction, a panel of this court concluded that the evidence was sufficient to support the jury's finding of premeditation and that Petitioner's voluntary intoxication did not negate his specific intent to commit first degree murder. *Id*., 2012 WL 4049175, at *17.

***Post-conviction hearing***

Petitioner testified that he advised trial counsel of his intoxication on the night of the offense. He discussed with his attorneys that his level of intoxication would have prevented him from forming the intent to commit first degree murder. He testified that his attorneys did not take any action to obtain an expert to testify on his behalf. When presented with a motion for forensic evaluation filed by his trial counsel and an order directing a forensic evaluation, Petitioner acknowledged that he had seen the motion and order. Petitioner

testified that he was evaluated by a psychiatrist prior to his trial. Petitioner also acknowledged that his trial counsel discussed with him a letter which stated the conclusions of the forensic evaluator, and based on his conversations with counsel, he decided to go forward with his trial. The following documents were admitted as exhibits to the post-conviction hearing: a motion for forensic evaluation; an order directing a forensic evaluation; a letter from Pathways Behavioral Health Services ("Pathways") stating that Petitioner was competent to stand trial and that, at the time of the offense, he was able to appreciate the nature and wrongfulness of his acts; as well as an ex parte motion for state funded expert services.

Only one of Petitioner's two trial counsel testified at the hearing. Trial counsel testified that after he received the letter from Pathways, he discussed the letter with Petitioner and determined that it was in Petitioner's best interest to present a defense of intoxication. He discussed "at length" with Petitioner his level of intoxication on the night of the offense and spoke to several State's witnesses, who corroborated Petitioner's level of intoxication. Trial counsel attempted to locate individuals whose names or nicknames Petitioner provided him, who Petitioner stated would testify as to his intoxication, but trial counsel was unable to contact them. Trial counsel did not seek further expert opinions because he did not believe the expert testimony was necessary in order to prove Petitioner's intoxication.

Petitioner presented his own testimony and the testimony of one of his trial counsel at the post-conviction hearing. The entire direct examination of Petitioner regarding his sole argument of ineffective assistance of counsel is as follows:

> Q. And you advised [both trial counsel] of your intoxication on the night in quesiton?
>
> A. Yes, sir.
>
> Q. And you told them roughly how much you had consumed that night?
>
> A. Yes, sir.
>
> Q. Did you have any conversations with them concerning whether that level of intoxication would have prevented you from forming the intent necessary to basically commit a first degree murder?
>
> A. Yes, sir.

Q.   And as a consequence did [trial counsel] take any action to obtain an expert on your behalf?

A.   No, sir.

Q.   Did they have any conversations with you about telling you what they did?

A.   No, sir.

Q.   They didn't talk to you about that at all?

A.   No, sir.

The one trial counsel presented by Petitioner testified as follows, after direct examination, in response to questions from the post-conviction hearing court:

EXAMINATION BY THE COURT:

Q.   [Trial counsel], is it permissible to say what your expert told you?

A.   Your Honor, we didn't consult after we got the forensic back –

Q.   You never actually consulted?

A.   We did not. We discussed with [Petitioner] his level of intoxication and we did introduce that.

Q.   Would you state for the record what your thinking was in that regard?

A.   Our thinking was that [Petitioner] got off work that day about 3 or 3:30 and then he showed up at the Kitty Kat Lounge about 11, maybe later that night and all during that afternoon he was drinking and drugging and we realized that the State probably wouldn't be able to contradict that and before trial we talked to, I know two of the State's witnesses, and I think more, and they corroborated that [Petitioner] was very intoxicated and we just didn't –

Q. So in your professional opinion what did you think the result of an expert being consulted might have been?

A. We didn't think that it was necessary because we thought we would be able to prove his intoxication from the factual witnesses.

Totally absent from the proof at the post-conviction hearing was any evidence, even in the form of an offer of proof, of what any actual or potential expert witness would state in his or her testimony.

At the conclusion of the post-conviction hearing, the post-conviction court found as follows:

> The Court finds that with regard to the two prongs – the Court finds there was no deficiency. The Court finds that [both of Petitioner's trial counsel], if they were acting in concert at this time, made a strategic decision that was logical and that was professionally made within the standards that are required of criminal defense attorneys and the Court further finds that there is no indication presented at all that the use of an expert in this case would have changed anything, so I'm going to respectfully deny your Motion, [Petitioner].

### *Analysis*

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. *See* T.C.A. § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001). As a mixed question of law and fact, this court's review of a petitioner's ineffective assistance of counsel claim is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases[,]" *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect

on the defense[,]" *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In other words, the petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id*. at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In a written order denying post-conviction relief, the trial court found that Petitioner's trial counsel "mad[e] a strategic, logical[,] and profession[al] decision as to whether to hire an expert, which was well within the standard of a criminal defense attorney" and that "no indication was presented at all that an[ ] expert would have changed the outcome of the trial[.]" The record does not preponderate against the trial court's findings. As noted above, Petitioner failed to present any evidence of what an expert witness would have stated. Defendant has failed to show that an expert, if called to testify, would have testified favorably in his defense. *See Black v. State*, 794 S.W.2d 552, 757-58 (Tenn. Crim. App. 1990).

Because Petitioner has failed to establish prejudice, we need not address whether trial counsel's performance was deficient. Nevertheless, we agree with the post-conviction court that counsel's decision not to call an expert was not deficient. The decision to call a witness is a tactical or strategic decision. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Felts*, 354 S.W.3d at 277; *see also Strickland*, 466 U.S. at 669 (judicial scrutiny of trial counsel's performance must be "highly deferential").

Petitioner argues on appeal that he was unable to "fully appreciate the impact of counsel's 'tactical' decision" not to obtain an expert witness to testify regarding Petitioner's intoxication at the time of the offense. According to the independent expert, obtained as a result of Petitioner's trial counsel's motion for a forensic evaluation, Petitioner had "sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and a rational, as well as factual understanding of the proceedings against him." Petitioner presented no proof at the post-conviction hearing that he did not understand

or appreciate the decision of his attorney not to call an expert witness. Petitioner did not testify that he did not understand. Although Petitioner initially testified at the post-conviction hearing that he was unaware that trial counsel had filed a motion for forensic evaluation on his behalf, he ultimately acknowledged that he had discussions with trial counsel about the motion, order and letter from Pathways, and that he chose to go forward with his trial based on conversations he had with his attorneys about those documents.

Petitioner also asserts in his brief that trial counsel's reliance on State's witnesses and Petitioner's own testimony to establish intoxication at trial was insufficient. The fact that a particular strategy or tactical decision was unsuccessful does not by itself establish deficiency. *Goad*, 938 S.W.2d at 369.

Petitioner has failed to show that counsel's performance was deficient or that he was prejudiced by counsel's alleged deficiency. Petitioner is not entitled to relief. Accordingly, the judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE